People of the State of Illinois, Plaintiff-Appellee, v. Mc-Cray Hughes, a Minor, Defendant-Appellant.

Gen. No. 53,341.

First District, First Division.

April 6, 1970.

Stanley J. Sacks, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

McCray Hughes, a 15-year-old boy, was found to be a delinquent by the Juvenile Division of the Circuit Court of Cook County on April 26, 1968. The amended petition alleging delinquency charged that he "committed the offense of Unlawful Possession of a Firearm in that he knowingly carried on his person a firearm described as a zip gun of a size that may be concealed on his person in violation of chapter 38, § 24–3.1(a)(1), Illinois Revised Statutes." At the delinquency hearing the State introduced into evidence a so-called zip gun consisting of a piece of metal with a piece of tape and a rubber band, and the trial judge, without any further evidence, deter-

mined it to be a "firearm." The finding of "delinquency" was based on "unlawful possession of a firearm," as charged in the amended petition.

On appeal the issues presented for review by the respondent are: (1) Did the court err when it did not require the State to prove that the instrument in question was operable and thus a "firearm" within the meaning of the statute? (2) Are the protections against unlawful search and seizure contained in the Federal and Illinois Constitutions applicable to juveniles in delinquency proceedings? (3) Did the court err in denying defendant's motion to suppress evidence?

The record shows that on March 19, 1968, the trial court heard and denied respondent's pretrial motion to suppress the zip gun as evidence. At the hearing on this motion Officer Sumner of the Chicago Police Department testified that on February 15, 1968, he saw respondent walking down the street in the company of another youth. His attention was drawn to respondent when he saw him place a shiny metallic object in his pocket. He believed the object was a knife about four inches in length, but due to darkness all he saw was a silver-looking object. The police officer got out of his car, stopped respondent and told him, "You are under arrest." He then searched respondent and did not find a knife but did find what is commonly known as a "zip gun." After both sides rested, the court denied the motion and continued the matter for trial.

On April 26, 1968, the delinquency petition came on for trial. It was stipulated that the testimony of the arresting officer would be the same as that presented at the hearing on the motion to suppress and that the same testimony should be allowed to stand as evidence at the trial. The State then introduced into evidence as an exhibit the "zip gun" and rested. The respondent then moved to dismiss the petition on the basis that the amend-

ed charge was possession of a firearm, and that there had been no testimony at either hearing that what was introduced in evidence was in fact a firearm and capable of being fired. The trial court heard the arguments of counsel and, after examining the exhibit, found it was a "firearm," stating, "I am taking judicial notice merely from the fact that I am holding it in my hand, looking at it." The court also remarked, "I would not require the Chicago police to fire in a test an obviously dangerous weapon which is more likely to cause injury to the person firing it than the person it is fired against." The court then made a finding of delinquency based on "unlawful possession of a firearm."

■ At the outset, and without discussion of the authorities submitted, we agree with respondent that all constitutional protections against unlawful searches and seizures are applicable to juveniles in delinquency proceedings. Kent v. United States, 383 US 541 (1966); In re Gault, 387 US 1 (1967).

Respondent contends that the search and seizure incident to his arrest were unlawful because reasonable grounds for his arrest did not exist at the time he was arrested within the meaning of Ill Rev Stats, c 38, § 107-2. Respondent maintains that "the primary question this Court must consider is when did the arrest take place." He points out that the arrest occurred when the uniformed officer alighted from his squad car and told defendant he was under arrest, and at this time no reasonable grounds existed for defendant's arrest because all the police officer had seen was a bright shiny object. People v. Accardi, 58 Ill App2d 364, 208 NE2d 43 (1965); People v. Mirbelle, 276 Ill App 533 (1934); and People v. Pruitt, 79 Ill App2d 209, 223 NE2d 537 (1967).

The State contends that the arresting officer acted properly and had reasonable grounds for arresting re-

spondent. The State notes that the police officer testified that he observed respondent put what appeared to be a shiny metal object into his pocket, and that he believed it to be a knife with a blade some four inches in length. The State also notes that the Municipal Code of Chicago, § 193–30, prohibits the carrying on any person of any knife, the blade of which is more than two and one-half inches in length. The State also asserts that when a lawful arrest has been made, the officer may conduct a search incident to the arrest for his own protection or to discover fruits of the crime. See People v. Peak, 29 Ill2d 343, 346, 194 NE2d 322 (1963).

After examining this record in the light of the guidelines set forth in current search and seizure authorities, we find that the trial court properly denied respondent's motion to suppress. In People v. Ivory, 38 Ill2d 339, 231 NE2d 438 (1967), it is said (p 343) :

> " 'It is certain that mere suspicion, common rumor or report do not afford probable cause for arrest, . . . yet, at the same time, reasonable cause means something less than evidence which would result in a conviction, and it is also established that reasonable cause may be founded upon evidence that would not be admissible at the trial. . . . Again, it has been stated that existence of reasonable cause which will justify an arrest without a warrant depends upon "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." . . . But at the same time it has been observed that police officers "often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals." ' "

██ In the instant case the arresting officer testified that he believed that respondent was carrying a

119

<br>

knife of illegal length. The officer was acting under a "quick appraisal" of the data before him, and even though his belief was erroneous, it was reasonable in view of the similarity between a knife and the zip gun in question. Because the arrest was justified, so, too, was the search incident to it, even though it disclosed a weapon of a nature different from what the officer thought it to be. Ill Rev Stats, c 38, § 108–1.

Respondent next contends that the trial court erred when it took judicial notice that the zip gun was an operable weapon and thus a "firearm" within the meaning of chapter 38, § 24–3.1(a) (1), which provides:

"(a) A person commits the offense of unlawful possession of firearms or firearm ammunition when:

"(1) He is under 18 years of age and has in his possession any firearm of a size which may be concealed upon the person."

He asserts "that a piece of metal with tape and a rubber band around it is a firearm is not a fact or proposition of generalized knowledge or so universally known that the court could properly take judicial notice of it."

Respondent further contends that for the State to sustain its burden of proof that respondent carried a "firearm," the State had to prove that the weapon was capable of ejecting a projectile. Respondent points out that although there are no Illinois decisions regarding what is a firearm, guidelines are to be found in the rule that criminal statutes must be construed strictly against the State. Citations include United States v. W. T. Rawleigh Co., 267 F2d 180 (1959) ; People v. Haskins, 190 Misc 888, 76 NYS2d 636 (1948) ; and Lipscomb v. State, 130 Wis 238, 109 NW 986 (1906).

In People v. Haskins, the New York statute prohibiting the carrying and use of a dangerous weapon was interpreted as follows (p 637) :

"This section, manifestly, seeks to prohibit the use and possession of dangerous weapons. What was found on the defendant was, of course, a weapon, but, query, was it a dangerous one? It is difficult, if not impossible, to adopt any hard and fast rule. This court is of the opinion that a weapon is dangerous within the meaning of the statute either when it can be fired or when, with reasonable preparation, it can be made effective and fit for the use for which it was manufactured."

In Lipscomb v. State, defendant was on trial for assault with intent to rob, being armed with a dangerous weapon. The court stated (p 988):

"It is an essential element of the crime of which the defendant was convicted that he be armed with a dangerous weapon. An empty revolver merely pointed at a person, and not used to strike with, is not a dangerous weapon, however, much the person at whom it is pointed may be put in fear."

The State argues that the trial judge did not take "judicial notice" that the gun was a firearm but instead made a "judicial determination" as the trier of the fact, and that the trial judge stated for the record, "I, as trier of the facts, made a judicial determination and I wish to correct the record. I merely took judicial notice in the legal sense of judicial notice. I made a judicial determination as I looked at the weapon, the exhibit, that it, in fact, was a dangerous weapon."

The State further argues that evidence that the exhibit was in operating condition was not necessary to show that the instrument was a firearm. The State asserts that the exhibit had a chamber and a firing pin designed to project a bullet, and that "it does not appear of record that the gun found on the person of the defendant at the time of his arrest would not fire."

The State also asserts that the majority of jurisdictions hold that the fact of whether or not a gun is loaded does not change its character as a dangerous weapon or firearm. State v. Ashland, 259 Iowa 728, 145 NW2d 910 (1966); Couch v. Commonwealth (Ky), 255 SW2d 478 (1953). The State also notes that chapter 38, § 83–1.1 of the Illinois Criminal Code, which deals with the identification of firearms, provides:

> "For the purposes of this Act:
>
>> " 'Firearm' means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas . . . ."

After examining this record we find that whether the court reached its conclusion as a result of "judicial notice" or after making a "judicial determination" that the exhibit was a dangerous weapon, it was not necessary for the State to prove that the instrument was in an operable condition. We perceive no difference between the meaning of "firearm" in section 24–3.1 or in section 83–1.1 of the Criminal Code, and thus it was sufficient to show that the exhibit was "designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." As trier of the fact, it was not improper for the trial judge to examine the instrument and determine whether it was a "firearm." We conclude that the evidence submitted was sufficient to support beyond a reasonable doubt the trial court's finding of "unlawful possession of a firearm."

We find no ground on which to disturb the finding of delinquency made by the trial court, and for the reasons given that judgment is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.