THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DIANE KINCAID, Respondent-Appellant.

Second District   No. 76-519

Opinion filed August 30, 1977.—Rehearing denied September 21, 1977.

William A. Kelly, Public Defender, of Galena, and Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Elgin, for appellant.

Richard J. Moriarty, Assistant State's Attorney, of Galena (Phyllis J. Perko and Barbara Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The respondent, Diane Kincaid is a minor who was adjudged delinquent and sentenced to six months probation. She appeals.

The petition for the adjudication of wardship charged the theft of a skirt valued at less than $150 from the Hey Jude Boutique in Galena. The minor contends that the court erred in refusing to suppress her confession which she claims was psychologically coerced and resulted from an illegal seizure.

Judy Govrik, the owner of the boutique testified that on July 23, 1976, she saw Diane Kincaid trying on several skirts, one of which she found missing when respondent left the store. Judy Govrik and her husband saw Diane in a Galena restaurant wearing the skirt at noon or 12:30 on the same day. Mrs. Govrik asked the owner of the restaurant if she could see Diane in the lavatory. The owner advised Diane of the request. Diane disappeared for 10 minutes. Then Mrs. Govrik saw Diane in the washroom and examined the skirt and noticed that a tag had been ripped out. She identified the skirt in evidence as the one that had been taken from the store and as the one she saw in the restaurant.

Deputy Chief Terry Renner testified both at the suppression hearing and at the adjudicatory hearing. He said that on July 29, 1976, he related to Diane during interrogation that her then boyfriend David Virtue to whom she was married at the time of the trial, had made a statement to the police implicating himself in the theft. The officer told Miss Kincaid that Virtue could get in trouble for giving a false statement to the police and asked her if she would like to tell the truth about the occurrence. Officer Renner testified that he advised Diane of her rights in accordance with a written form and that she acknowledged that she knew what each one of them meant and signed the written waiver. Officer Renner stated that prior to receiving Diane's statement he told her that charges could be brought against her or her boyfriend. The written statement admitted in evidence amounted to a confession of the theft.

Officer Renner also testified that on July 23 he accompanied another deputy who was serving the summons and petition on Diane to her residence. He said that the deputy asked if they could take the skirt with them and that after an argument Diane handed the skirt to the officers. He testified that Diane stated that she bought the skirt and that the officers told her that the place to decide that was in the courtroom and to give up the skirt until it was proven otherwise. When asked whether he considered that she consented to the taking of the skirt the officer answered that he did not know. He also stated that he did not inform Diane that she did not have to give the skirt to the officers nor did he hear the other deputy tell her this.

The respondent testified that on July 23 she was sitting in her apartment with two of her friends and heard a banging on the door. She testified that Officer Renner and the other deputy were at the door and showed her the papers ordering her to appear in court. The deputy told Diane that they needed the skirt for court and she said she replied "why should I have to

give up the skirt." The officer stated that it was because they needed it in court. Officer Renner then told her that if she was going to argue she would have to argue in court. Diane stated that she went into the bedroom, got the skirt, went back and gave it to the officers. She testified that she was not consenting to give them the skirt of her own free will.

We first consider respondent's contention that her confession was involuntary. She argues that the statement by Officer Renner that her boyfriend could get in trouble for giving false information carried with it the implication that charges would be brought against David Virtue if she didn't confess and that therefore the confession which followed was a result of psychological coercion and should have been excluded.

■■ Confessions by juveniles are to be strictly scrutinized to assure that they have not resulted from overreaching, coercion or fear. (*In re Gault*, 387 U.S.1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967). See also *People v. Simmons*, 60 Ill. 2d 173, 179-81 (1975).) However, the trial court's determination as to the voluntariness of a confession will not be disturbed on review unless "palpably erroneous." *People v. Gamble*, 41 Ill. App. 3d 394, 402 (1976).

■■ We conclude that the court's ruling admitting the confession into evidence was not error. Officer Renner had good reason to believe that the initial statement by David Virtue was false. Virtue had, in fact, given the officers a later statement which implicated the respondent. The respondent did not testify at the hearing on the motion to suppress. The officers' testimony standing alone could reasonably have been viewed by the judge as demonstrating to respondent the benefit and desirability of simply telling the truth and in this view did not amount to coercion in any form.

*Lynumn v. State of Illinois*, 372 U.S. 532, 9 L. Ed. 2d 922, 83 S. Ct. 917, (1963), and *People v. McGuire*, 35 Ill. 2d 219 (1966), cited by the respondent are clearly distinguishable on their facts. In *Lynumn* the court found that it was "abundantly clear" that the petitioner's oral confession was made only after the police had told her that state financial aid for her infant children would be cut off and her children taken from her if she did not cooperate. In *McGuire* the critical issue was whether defendant's will was overborne by excessive interrogation. Defendant had a history of mental illness and had been committed for a time. In addition, the officers had informed him during the course of questioning that they would like to kill him.

In *United States v. Bolin*, 514 F.2d 554, 560 (7th Cir. 1975), also relied on by the respondent, the defendant signed a consent form while undergoing custodial interrogation only after the implied threat that his girl friend would be arrested if he did not sign. The officers also told the defendant that if he signed the search waiver that they would not arrest

his girl friend. Under these circumstances the court found the consent involuntary. It further appeared that the comments were entirely baseless. However, in the present case Officer Renner's statements were not entirely baseless, there was no statement by the officer either expressly or by fair implication that if the respondent cooperated charges would not be filed against her friend nor was there any implication that the prosecution of David Virtue depended on whether respondent failed to give a statement. Under these circumstances *Bolin* is clearly distinguishable.

■■ We next consider respondent's argument that the action of the police officers inducing the juvenile to hand over incriminating evidence was a constitutionally impermissible seizure which led to and tainted her subsequent confession.

■■ We agree that the skirt was obtained in a constitutionally impermissible manner. The Illinois Supreme Court has not required that the People show that the consenting party was advised of rights secured by the fourth amendment. Nevertheless, the failure to do so is a factor bearing on the understanding nature of the consent. (*People v. Haskell*, 41 Ill. 2d 25, 31 (1968).) Further, courts indulge every reasonable presumption against waiver of fundamental constitutional rights and the prosecution must show a consent to a seizure of evidence by clear and positive testimony which establishes that there was no duress or coercion actual or implied. *People v. Haskell*, at 31.

In *Haskell* the defendant asked if it was necessary that he turn over the weapon to the officers and was told that it was necessary. The supreme court held under these circumstances there was no showing of a knowing and free consent. Similarly, here the consent was not shown to be a knowing and free consent to turn over the skirt. Rather, the proof showed that the skirt was turned over in submission and resignation to police authority. The fact that the respondent was a juvenile of age 16, and was not told that she did not need to consent is also a factor bearing on the decision.

■■ The juvenile has argued that the confession was the fruit of the erroneously seized evidence and therefore that the confession should be suppressed on that basis. We are not so persuaded. It is true that if an accused establishes the connection between the illegality and what is alleged to be its fruits the prosecution has the burden of establishing by clear and convincing evidence that the challenged evidence has come from an independent source. (*People v. Wilson*, 60 Ill. 2d 235, 238 (1975).) There is, however, substantial independent evidence of the theft of the skirt which predates and is untainted by its physical seizure. Prior to the time the skirt was taken from the respondent Mrs. Govrik had observed the respondent trying on skirts in her boutique and shortly thereafter had

observed her wearing a skirt which resembled the one which she found missing. Mrs. Govrik also examined the skirt in the washroom prior to the seizure. This all occurred on July 23 and the taking of respondent's confession did not occur until July 29. Under these circumstances we believe the prosecution has met its burden of establishing by clear and convincing evidence in its possession prior to the seizure that the respondent committed the theft of the skirt. See 29 Am. Jur. 2d *Evidence* §415, at 474-75 (1967). See also Annot., 43 A.L.R.3d 385 (1972).

■■ In this view since we have found that the confession of the defendant was properly introduced into evidence we also conclude that the illegal seizure of the skirt does not require reversal. The error under all of the circumstances was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967).

The judgment is affirmed.

Affirmed.

RECHENMACHER, P. J., and NASH, J., concur.