*In re* J. A., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellant, *v.* J. A., Respondent-Appellee.)

Fifth District    No. 79-342

Opinion filed June 27, 1980.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Patrick M. Young, Public Defender, of Belleville (Vincent J. Lopinot, Assistant Public Defender, of counsel), for appellee.

Mme JUSTICE SPOMER delivered the opinion of the court:

This appeal by the State from an order suppressing evidence in a juvenile delinquency proceeding raises issues as to the relation between a public school student's fourth amendment rights and the duty of school officials to discipline and protect the students for whom they stand *in loco parentis*.

Most of the salient facts in this case are undisputed. The assistant principal of Mascoutah High School received a telephone tip from Sergeant Ingelman, a security officer at nearby Scott Air Force Base, that J. A., a student, had a substance believed to be marijuana in his possession, which he intended to sell at the high school. The school officials had previously received and relied on information from the same Base security department, but not from that particular individual. The information was relayed to Clyde Brasher, the dean of students, who then reported it to Dr. Dean, principal of the school. Acting at Dr. Dean's direction, Brasher removed the boy from his first-period class to the principal's office, where he was presented with the information possessed by the school authorities. The minor was requested to empty his pockets; he complied, but nothing was found. Brasher then picked up the minor's coat and, feeling something in a zippered compartment in the hood,

conducted a search. Two packages containing what appeared to be cannabis were found.

The Mascoutah chief of police was called to field test the substance, and the student's mother was called. When the police chief arrived, he did not have sufficient liquid to conduct the test, so Brasher accompanied him to Scott Air Force Base to obtain a test of the substance. Brasher subsequently signed the petition initiating these juvenile proceedings, seeking an adjudication that the student was delinquent in that he had committed the offense of unlawful possession of more than 10 but less than 30 grams of cannabis. See Ill. Rev. Stat. 1977, ch. 56½, par. 704(c).

At the hearing on the minor's motion to suppress the introduction of the substance into evidence, Brasher testified that as dean of students he was paid by the school district and was in charge of discipline and attendance as directed by the principals, assistant principals, and the city school board. In addition to his administrative duties at the school, he served as a part-time juvenile officer for the Mascoutah police department, and described this role as follows:

"My duties as juvenile officer are as assigned by the chief of police. I don't have any arrest powers. I am not a police officer such that I carry a gun. I'm not authorized to carry a gun unless I am directed to do so by the chief of police. I am only paid on an hourly basis when directed to assist in a matter involving a juvenile."

Brasher further testified that he was directed only by the principal, not the police, in his capacity as dean of students, and that he was acting in his capacity as dean in taking the marijuana to Scott Air Force Base for testing at the direction of the principal. He had no direction from the chief of police to act as juvenile officer in this case.

Although the minor emptied his pockets when directed to do so by the school officials, he denied to them that he had any marijuana in his possession. He testified that he did not consent to the search of his coat. Brasher testified that he inadvertently discovered the lump in the lining of the hood as he was placing the coat on a chair, but he could not recall whether he had asked for permission to open the zippered compartment. The minor had not been observed doing anything suspicious or illegal prior to the search, was not under arrest, and no warrant had been issued.

The trial court found that Brasher had acted as a police officer and that he had not had probable cause to conduct the search, stating:

"The Court feels that whereas it may have been debatable in the actions leading up to the search as to whether he was acting as a Dean of Students or a police officer that he did cross the line. That is, unquestionably he was acting as a police officer at the time of the discovery of the evidence in question, in that he took the evidence to Scott Air Force Base for analysis and the Court further

> notes that he is the complaining witness in this delinquency charge, which is before the Court."

The evidence was therefore suppressed as the fruit of an unlawful search and seizure, in violation of the minor's constitutional rights.

On appeal to this court, the State argues that the finding that Brasher was acting in the capacity of a police officer at the time of the search is manifestly erroneous; that probable cause is not required before a school administrator may lawfully search a student; and that, even if the search were illegal, the exclusionary rule should not be applied in this context.

■■ A minor who is the subject of a proceeding under the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*) is assured of all the procedural rights enjoyed by adults except where such rights are specifically precluded by laws which enhance the protection of the minor. (Ill. Rev. Stat. 1977, ch. 37, par. 701—2(3)(a).) When the State seeks to prove that a minor is delinquent, the ordinary criminal standards of proof and rules of evidence apply. (Ill. Rev. Stat. 1977, ch. 37, par. 704—6.) It is settled in this State that all constitutional protections against unlawful searches and seizures are applicable to juveniles in delinquency proceedings, and that the exclusionary rule is also applicable. *In re Marsh* (1968), 40 Ill. 2d 53, 237 N.E.2d 529; *People v. Kincaid* (1977), 51 Ill. App. 3d 975, 367 N.E.2d 456; *People v. Hughes* (1970), 123 Ill. App. 2d 115, 260 N.E.2d 34.

■■ It is equally well settled that searches by private individuals are not within the ambit of the fourth amendment's protection against unreasonable searches and seizures (*Burdeau v. McDowell* (1921), 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574; *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848), unless the individual conducting the search can be regarded as acting as an agent of the State in light of all the circumstances of the case. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 487, 29 L. Ed. 2d 564, 595, 91 S. Ct. 2022, 2049.) In an apparent case of first impression in Illinois, the Appellate Court for the Fourth District recently held that whether an individual is to be considered an agent of the State for fourth amendment purposes depends on the capacity in which he was acting at the time of the challenged search, regardless of his primary occupation. (*People v. Luetkemeyer* (1979), 74 Ill. App. 3d 708, 393 N.E.2d 117.) In that case the court held that an individual who found cannabis on defendant's property while there to make house repairs—although he was a special deputy sheriff—was not a State agent, based primarily on the fact that he could serve as a deputy only at the sheriff's specific request and that the police had not contacted him to investigate the defendant or his property. Similar facts exist in the case at bar.

It has not been squarely decided whether a public school official in

Illinois is to be considered an agent of the State to whom the fourth amendment and the exclusionary rule apply. In *In re Boykin* (1968), 39 Ill. 2d 617, 237 N.E.2d 460, our supreme court upheld the warrantless search of a student on school premises by police officers who had been informed by an assistant principal that he had received anonymous information that the student had a gun. The court pointed out that the school official had a statutory duty to maintain discipline and to act for the safety and supervision of the pupils in the absence of their parents or guardians pursuant to section 34—84a of the School Code (Ill. Rev. Stat. 1967, ch. 122, par. 34—84a), which provides, *inter alia*:

"Teachers and other certified educational employees shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians."

Without resting the result reached upon this statute (which codifies the common law *in loco parentis* doctrine), the court in *Boykin* simply held that the search was not unreasonable under the circumstances, and thus not barred by the fourth amendment.

The trial court in the case before us read *Boykin* for the proposition that it is permissible for school authorities to engage in a search for weapons even upon an anonymous tip insufficient to give probable cause, but distinguished that case from the instant situation as follows:

"The court is of the opinion that *Boykin* should be limited to showing situations where there is evidence or objects that are so inherently dangerous to the person carrying the objects or either to the general school population that in the interest of safety, it might necessitate a search without a requirement of probable cause.

In other words, in effect, a situation of emergency. The court finds here that really no situation of danger existed; that we were not even dealing with really a dangerous drug in the sense of heroin or some other, let's say inherently dangerous drug, and definitely we were not dealing with a dangerous weapon."

We think the trial court overlooked the fact that in *Boykin* the supreme court said that the school official is the appropriate person to appraise whether a dangerous situation exists within the school.

Other jurisdictions have taken various approaches to the question of whether evidence obtained by means of a search by school officials is subject to fourth amendment strictures. (See generally Annot., 49 A.L.R.3d

978 (1973).) A number of courts have taken the view that school officials are private parties for the purposes of the exclusionary rule. (See, *e.g., In re Donaldson* (1969), 269 Cal. App. 2d 509, 75 Cal. Rptr. 220; *People v. Stewart* (1970), 63 Misc. 2d 601, 313 N.Y.S.2d 253; *Mercer v. State* (Tex. Civ. App. 1970), 450 S.W.2d 715.) Other courts have either held explicitly that a public school official conducting a search is a government agent, or have assumed that to be the case. (See, *e.g., State v. Baccino* (Del. Super. 1971), 282 A.2d 869; *State v. Mora* (La. 1975), 307 So.2d 317; *Doe v. State* (1975), 88 N.M. 347, 540 P.2d 827.) Still other courts have taken the view that searches instigated by law enforcement officials, or in which law enforcement officials participated in a significant degree, are subject to the exclusionary rule. See cases cited at 49 A.L.R.3d 978, 987-89 (1973).

Whether or not school officials are considered agents of the State, the courts have generally upheld searches of students as reasonable intrusions. (See, *e.g., In re Thomas G.* (1970), 11 Cal. App. 3d 1193, 90 Cal. Rptr. 361; *In re Fred C.* (1972), 26 Cal. App. 3d 320, 102 Cal. Rptr. 682; *State v. Baccino* (Del. Super. 1971), 282 A.2d 869; *People v. Jackson* (1971), 65 Misc. 2d 909, 319 N.Y.S. 2d 731, *aff'd* (1972), 30 N.Y.2d 734, 284 N.E.2d 153; *State v. Young* (1975), 234 Ga. 488, 216 S.E.2d 586; *In re State in the Interest of G. C.* (1972), 121 N.J. Super. 108, 296 A.2d 102; but see *State v. Mora* (La. 1975), 307 So.2d 317.

■ To return to the case before us, we think that the trial court's determination that Dean Brasher was acting as a police officer at the time of the search was against the manifest weight of the evidence. The evidence clearly showed that he was on the premises in the capacity of a school disciplinary officer, and that he was acting in that capacity under the express direction of his school superiors, and not at the direction of the police chief, when he conducted the search. Furthermore, the trial court's reliance for its decision on the fact that Brasher took the marijuana to Scott Air Force Base for analysis flies in the face of the holding in *Leutkemeyer*, where the individual likewise took the substance he had discovered to the sheriff's department for testing. Thus, we hold that Brasher's part-time employment by the police department is irrelevant for our fourth amendment analysis.

This determination does not, however, end our inquiry, as two fundamental questions remain. Is a public school official an agent of the State for fourth amendment purposes? If so, what standard should be used to judge the legitimacy of the search of a student conducted by a school official?

We are persuaded by the approach taken by the Delaware court in *State v. Baccino* (Del. Super. 1971), 282 A.2d 869. School officials are not in the same position as private citizens whose behavior would likely be

unaffected by the exclusionary rule. They are clearly employees and agents of the State, and the deterrent purpose of the rule could be served by its application to them. This does not, however, necessarily require that school officials must be treated exactly as police officers. School officials' primary role is not law enforcement; they are required by law, however, to maintain discipline, and they are responsible for the health and welfare of the students in their charge. We agree with the court in *Baccino* that the doctrine of *in loco parentis* must be balanced against the fourth amendment rights of the student in determining whether those rights have been violated in a particular case. The proper standard by which searches by school officials should be measured is not the probable cause standard of criminal law, but whether or not the officials have a reasonable suspicion that a student is in possession of contraband which might endanger that student or other students. This "reasonable suspicion" standard should give a proper balance between the student's fourth amendment rights to be free from arbitrary searches and the school officials' duty to discipline and protect the students for whom they stand *in loco parentis*.

■ Applying this "reasonable suspicion" standard to the facts of the instant case, we cannot say that the search conducted by Brasher was an unreasonable one under the circumstances. School officials had been informed by an apparently credible authority that the student was in possession of marijuana and intended to sell it to other students. It then became the duty of the school officials to investigate the truth of this information; indeed, they would have been derelict in their duty if they had failed to do so. Although this information, without more, would not have given a police officer probable cause to search an adult, we think that the school authorities were justified under all the circumstances here in conducting the search of the student's person. We therefore reverse the order granting the motion to suppress, and remand this cause to the circuit court of St. Clair County for further proceedings.

Reversed and remanded.

HARRISON and KASSERMAN, JJ., concur.