# GOVERNMENT OF THE VIRGIN ISLANDS IN THE INTEREST OF M. S.

Fam./Juv. No. 40/1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 26, 1981

HENRY V. CARR, III, Assistant Attorney General (Department of Law—Criminal Division), St. Thomas, V.I., *for Government*

JACQUELINE W. HUBBARD, Office of the Territorial Public Defender, St. Thomas, V.I., *for minor M. S.*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

The application of the Fourth Amendment[1] in our public schools must be determined in deciding a student's motion to suppress marijuana that was found in a search by his teacher. The student, M. S., was searched by a teacher who did not have probable cause to believe M. S. had done anything wrong. This juvenile prosecution for possession of marijuana is the direct result of that search.

### The Search Lacked Probable Cause

The sole witness at the suppression hearing was the student's teacher. While he stated that he smelled marijuana on M. S.'s

---

[1] The Fourth Amendment, which applies to the Virgin Islands pursuant to Section 3 of the Revised Organic Act of 1954, prec. 1 V.I.C. (Supp. 1980), provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

clothes at the time of the search,[2] he saw nothing to cause him to believe M. S. possessed marijuana. In fact, he did not believe that M. S. was carrying any.

Defense counsel (to the teacher): ". . . at the time you took [M. S.] down to search did you believe that he had marijuana on him?
Teacher: "No, not really."

Transcript, September 9, 1980, pp. 47–48. No warrant was sought, and the Government concedes that the search was not based on probable cause. Transcript, September 29, 1980, p. 2. The only possible purpose of the search was to find marijuana, which the teacher found in M. S.'s socks. The teacher immediately gave the marijuana to the assistant principal for him to give to the police. Transcript, September 9, 1980, p. 47.[3]

If the full force of the Fourth Amendment applies, the marijuana may not be admitted at the delinquency trial. The Government, however, urges that neither the Fourth Amendment nor the rule excluding evidence obtained in violation of the Fourth Amendment should apply to this in-school search. If they do apply, the Government contends that a lower standard than probable cause should be used to determine if the search was constitutionally reasonable.

### The Constitution Restrains In Loco Parentis

While the Supreme Court never has held expressly that the Fourth Amendment applies to juvenile proceedings, there is little doubt that it does. E.g., Interest of L. L., 90 Wis.2d 585, 280 N.W.2d 343 (Wis. Ct. App. 1979); State v. Mora, 307 So.2d 317 (La.), vacated on other grounds, 423 U.S. 809 (1975); and State v. Lowry, 95 N.J.

---

[2] The smell of marijuana about a person does not by itself establish probable cause to search a person to see if he has any. United States v. Dien, 609 F.2d 1038 (2d Cir. 1979). Compare Johnson v. United States, 333 U.S. 10 (1948), with Chapman v. United States, 365 U.S. 610 (1961). But see United States v. Alderete, 546 F.2d 68 (5th Cir. 1977), and United States v. Martinez-Miramontes, 494 F.2d 808 (9th Cir. 1974), cert. denied 419 U.S. 994 (1974).

[3] The teacher is M. S.'s uncle. Relying on the fact that the Fourth Amendment does not apply to searches by private citizens, e.g., McConnell v. State, 595 P.2d 147 (Alaska 1979), cert. denied 444 U.S. 918 (1979), the Government ardently claims that this was not a search by a teacher, but a private citizen—a concerned uncle. The testimony, however, does not support this claim. M. S. was under the teacher's authority as a member of the teacher's health class. The teacher took him to a school administrator's office, searched him and gave the evidence he found to the school administration. From these events, the court finds that the teacher was acting in his official capacity as a teacher.

293

Super. 307, 230 A.2d 907 (1967).[4] The Government, though, attempts to eliminate Fourth Amendment protections from in-school searches by relying on the common law doctrine of in loco parentis. Mere invocation of this Latin phrase, though, like some sort of magical incantation, cannot give the Government extra constitutional powers.

■■ In loco parentis does give a state broad powers to protect the property interests and the persons of children, In re Gault, 387 U.S. 1, 16 (1967), and like many other jurisdictions,[5] the Virgin Islands expressly recognizes this authority in its public schools.

> All principals and teachers in the public schools in the Virgin Islands shall have the right to exercise the same authority, as to conduct and behavior, over pupils attending their schools during the time they are in attendance, including the time required in going to and from their homes, as parents, guardians, or persons in parental relation to such pupils.

17 V.I.C. § 87 (1976). While this statute gives school officials broad parental-like powers over children, that authority "must be exercised consistently with constitutional safeguards." See Goss v. Lopez, 419 U.S. 565, 574 (1975).

> The Latin phrase [in loco parentis] proved to be a great help to those who sought to rationalize the exclusion of juveniles from

---

[4] The Supreme Court repeatedly has stated that it never has defined the "totality of the relation between the juvenile and the state." E.g., In re Gault, 387 U.S. 1, 13 (1967). The totality of the court's decisions, though, provide a rather complete definition of that relationship. See generally Developments in the Law—The Constitution and the Family, 93 Harv. L. Rev. 1156 (1980), and Buss, The Fourth Amendment and Searches of Students in the Public Schools, 59 Iowa L. Rev. 759 (1974). (Hereinafter "Buss").

The full force of almost all constitutional safeguards in the area of criminal procedure have been applied to juveniles. Juveniles are entitled to notice of the charges pending against them, and the right to counsel, the right to confront the witnesses against them, and the right against self-incrimination. In re Gault, supra. Similarly, juveniles are protected against coerced confessions, Gallegos v. Colorado, 370 U.S. 49 (1962), being placed in double jeopardy, Breed v. Jones, 421 U.S. 519 (1975), and cannot be found delinquent or guilty without proof beyond a reasonable doubt, In re Winship, 397 U.S. 358 (1970). See generally David W. v. California, — U.S. —, 101 S.Ct. 622 (1980). (Justice Marshall dissenting to a denial of certiorari.) There can be no doubt that the protections of the Fourth Amendment also apply to juveniles because the court's application of the rights listed here is based on the truism that the loss of liberty is no less a deprivation for a child than for an adult. In re Gault, supra, 387 U.S. at 17.

[5] See, e.g., Picha v. Wielgos, 410 F.Supp. 1214 (N.D. Ill. 1976).

the constitutional scheme; but its meaning is murky and its historic credentials are of dubious relevance . . . [T]here is no trace of the doctrine in the history of criminal jurisprudence. At common law, children under seven were considered incapable of possessing criminal intent. Beyond that age, they were subjected to arrest, trial, and in theory to punishment like adult offenders. In the old days the state was not deemed to have the authority to accord them fewer procedural rights than adults. (footnotes omitted).[6]

In re Gault, supra, 387 U.S. at 16–17.

■■ The Fourth Amendment, therefore, does not become inapplicable merely because a teacher exercises in loco parentis authority to search a student. This is especially so when the evidence is to be used in a juvenile prosecution. Education is compulsory in the Virgin Islands and by law M. S. had to be in school. 17 V.I.C. § 82 (1976). The teacher is a public employee, licensed and paid by the Government. 17 V.I.C. § 12 (Supp. 1980). Even the authority to act in loco parentis is available to a teacher only because of his public school employment. 17 V.I.C. § 87, supra. Consequently, in searching M. S., no matter how caring and well-meaning the teacher may have been, he was an agent of the Government using his governmental authority. Morale v. Grigel, 422 F.Supp. 988 (D.N.H. 1976); Picha v. Wielgos, 410 F.Supp. 1214 (N.D. Ill. 1976), and Interest of L. L., supra.[7]

Permitting teachers to ignore the Fourth Amendment while the police must adhere to it also inherently is dangerous, especially when there is a relationship between the two state agencies. See Benanti v. United States, 355 U.S. 96 (1957). Teachers too easily

---

[6] While the "Latin phrase" initially referred to was parens patriae, the court expressly states that these two common law doctrines are identical in origin and for the purposes of constitutional criminal procedure. In re Gault, supra, 387 U.S. at 17.

[7] See generally Buss, supra, at 767; La Fave, 3 Search and Seizure § 10.11, p. 452 (1978) (hereinafter "La Fave") and Students and the Fourth Amendment: Myth or Reality, 46 U.Mo.K.C.L. Rev. 282 (1977).

In addition, there is a substantial difference between a search by a parent and a search by a teacher in which criminal evidence is discovered. When the state searches a child, the Government, and not the parent, acquires the discretion to subject the child to juvenile proceedings which ultimately can divest the parents of custody through the remainder of the child's minority. 4 V.I.C. § 175 (1967). See State v. McKinnon, 88 Wash.2d 75, 558 P.2d 781, 785 (1977) (Rosellini dissenting). See generally Search and Seizure in the Public Schools, 36 La. L. Rev. 1067 (1976).

could perform searches for police that the police could not perform because of constitutional restraints. A school policy to report to the police the discovery of any contraband on a student reflects a relationship between the schools and the police. Indeed, if crime is a pressing problem in our schools, it is a relationship that probably will continue until another solution is found. The natural offspring of such a relationship, though, is police encouragement of student searches and a law enforcement tool. The dangers of this type of relationship were recognized years ago when federal law enforcement agents were barred from using evidence illegally seized by state agents. This was before the exclusionary rule was applied to the states.[8] Benanti v. United States, supra, and Rea v. United States, 350 U.S. 214 (1956).

■ ■ As a result, regardless of the type of agent using the Government's power to search, the Fourth Amendment protection against unreasonable searches and seizures remains firmly embedded in our criminal justice system, and this requires that government searches be based on probable cause. This requirement, though, is not without exception,[9] but like all exceptions, any relaxation of this standard may occur only when truly necessary to protect an important governmental interest. See generally Terry v. Ohio, 392 U.S. 1, 19–21 (1968). The need to compromise the probable cause requirement, therefore, must be scrutinized, and it may be lowered only as much as necessary. See United States v. Brignoni-Ponce, 422 U.S. 873 (1975), and Almeida-Sanchez v. United States, 413 U.S. 266 (1973). There is no evidence now before this court that establishes the need for a diminution of constitutional safeguards. Without such proof and a showing that alternative solutions will fail, the erosion of the Fourth Amendment's probable cause requirement cannot be approved. Cf. United States v. Barbera, 514 F.2d 294 (2d Cir. 1975).[10]

---

[8] The exclusionary rule was made applicable to the states in Mapp v. Ohio, 367 U.S. 643 (1961).

[9] The Government does not contend that any of the established exceptions to the probable cause requirement apply here. These exceptions are a "stop and frisk" of a person suspected of being armed and participating in criminal activity, e.g. Terry v. Ohio, supra, at 292–95, administrative searches, United States v. Biswell, 406 U.S. 311 (1972); Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970), and Camara v. Municipal Court, 387 U.S. 523 (1967), and border stops. Almeida-Sanchez v. United States, 413 U.S. 266 (1973). See State v. McKinnon, supra, n. 2 at 790 (Rosellini dissenting). See generally Students and the Fourth Amendment: Myth or Reality? supra at 292–95.

[10] The Government states that the constitutional rights of minors must be interpreted in the context of their minority and for this reason must be interpreted to give

296

*Criteria for Relaxing Probable Cause Standard*

█ In Camara v. Municipal Court, 387 U.S. 523 (1967), the Supreme Court held that housing inspections would be allowed upon the establishment of reasonable suspicion that the minimum standards of a housing code were being violated. The probable cause requirement was lowered to reasonable suspicion because: 1) the search was in response to a unique danger that required a highly effective solution, 2) the required degree of success could not be accomplished if the probable cause standard was enforced, and 3) the search constituted a relatively limited invasion of privacy compared with the typical police search for evidence of a crime. Only if, on balance, the search of M. S. can meet these criteria does this court believe that the Fourth Amendment probable cause standard can be relaxed to reasonable suspicion.[11]

█ Crime, if present in our schools, certainly presents a unique danger that cannot be tolerated. Crime in a school constitutes a lethal threat to effective education and a cause for consternation by all concerned parents and citizens.[12] While crime in Virgin Islands schools is a common topic of discussion and concern, the extent and magnitude of the problem remains unknown, and, as a result, so is the weight that should be given to the first of the Camara criterion.

█ Likewise there is no proof that crime in our schools cannot be prevented and solved within the traditional bounds of the constitution and the probable cause requirement, the second Camara criterion. This factor would appear to be harder to satisfy because schools appear to be uniquely well-suited to weed out crime and still obey the Fourth Amendment. Because of compulsory education,

---

them less rights than adults. Ginsberg v. New York, 390 U.S. 629, 638 (1968). In Ginsberg, however, the court redefined a minor's First Amendment rights so that the state could constitutionally find certain magazines obscene when viewed by children, but not obscene when viewed by adults. Clearly, the ultimate thrust of Ginsberg was to protect the minor, whereas here the principal thrust is to protect society and the community as a whole.

While the redeeming social value of a magazine may only be recognized with age, there can be no meaningful distinction between an adult's right to be free from unreasonable searches and seizures and that of a minor. The ultimate interests at stake—privacy and liberty—do not become valuable through age. See note 4, supra.

[11] Many commentators advocate application of the Camara standards to evaluate the constitutionality of public school searches, e.g., La Fave, supra at 457. Cf. State v. McKinnon, supra (Rosellini dissenting).

[12] La Fave, supra at 458; Interest of L. L., supra, and People v. Scott D., 34 N.Y.2d 483, 358 N.Y.S.2d 403, 315 N.E.2d 466 (N.Y. 1974).

297

school children are the sole segment of our society who are subjected to government supervision for a good portion of the day, five days a week. Through this extensive supervision school officials are capable of learning far more about individual students and school events than police officers.[13] School officials also have a wide range of administrative options that can be utilized with a problem student, from keeping a child after school to expulsion. Consequently, to satisfy the second Camara criterion, the Government will have to prove that these apparent weapons are insufficient to combat the problem and that teachers must be able to search students where there is reasonable suspicion that criminal activity is present.

The balance between these first two Camara criteria will be critical, however, because in this case there can be no argument that the teacher's search of M. S. was anything but a relatively limited invasion of privacy as required by the third criterion in Camara. Here, the teacher searched M. S. down to his socks for the sole purpose of discovering marijuana, with the ultimate purpose being that any evidence found would be given directly to the police. In this factual setting, the search was no more or less than a governmental search to discover evidence of a crime, and, in fact, has resulted in a juvenile prosecution.[14]

### Excluding Evidence Can Deter Improper Searches and Is Only Remedy

Finally, the Government misreads existing law when it claims that the exclusionary rule applies only when police officers conduct illegal searches. To the contrary, the exclusionary rule should be applied if the search was unreasonable. This proceeding will determine M. S.'s guilt or innocence, and application of the rule may deter teachers, as government agents, from unreasonable searches.

While the Supreme Court recently has placed limitations on the use of the exclusionary rule in criminal proceedings in which a defendant's guilt or innocence is found, United States v. Janis, 428 U.S. 433 (1976); Stone v. Powell, 428 U.S. 465 (1976); and United States v. Calandra, 414 U.S. 338 (1974), and has rejected extension of the exclusionary rule beyond criminal trials, this court does not

---

[13] See generally La Fave, supra, at 459–462, and Students and the Fourth Amendment: Myth or Reality?, supra.

[14] As the court said in Camara, supra 387 U.S. at 530, "a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime."

glean from these recent decisions any rationale that would support a conclusion that the exclusionary rule is inapplicable to juvenile prosecutions. Moreover, the Supreme Court never has stated that the exclusionary rule is only capable of deterring unreasonable searches that are performed by police officers as opposed to other government agents.[15] Although the purpose of the rule at times has been said to deter improper "police" conduct,[16] this has been said in the context of cases in which the agents involved were police. It must be noted, though, that the court also has referred to the exclusionary rule's purpose as deterrence of improper "government" conduct. United States v. Calandra, supra, 414 U.S. at 348.

 If teachers are to assume law enforcement responsibilities, then the rule should apply. Certainly, a school teacher is as capable as a police officer of understanding the rule and being deterred from improper conduct. In re J. A., 85 Ill.App.3d 567, 40 Ill.Dec. 755, 406 N.E.2d 958 (Ill.App. 1980), and Interest of L. L., supra, 280 N.W.2d at 343. When the Government asserts its police power, whether cloaked in a police uniform or the dress of a teacher, the Fourth Amendment and the exclusionary rule should apply to prevent abuse.

## Conclusion

 Students when they enter a classroom, even under a compulsory education law, are clothed with certain fundamental rights, one of which is the protection of the Fourth Amendment against unreasonable searches and seizures. If this right is violated by school officials, the rule excluding illegally obtained evidence from juvenile or criminal prosecution shall be applied. The Government in carrying out its responsibilities to provide education also is clothed with the authority to function in loco parentis and is required to provide a suitable environment to educate the children of this community. This, of course, cannot be accomplished if the environment includes crime and drugs.

 In order to preserve an appropriate educational environment, the Government is bound to adhere to the probable cause

---

[15] The Government's argument is not, however, unsupported by authority. State v. Young, 234 Ga. 488, 216 S.E.2d 586 (Ga. 1975), cert. denied 423 U.S. 1039 (1975). This court, though, agrees with the dissent in Young as well as the many commentators who regard Young as ill-founded. E.g. Student Searches, the Fourth Amendment: Myth or Reality? supra, at 304–07 (1975).

[16] E.g., United States v. Calandra, supra, 414 U.S. at 347.

requirement of the Fourth Amendment unless on balance it can be established that (1) a unique danger exists in the schools that requires a highly effective solution, (2) that a solution cannot be found within the confines of the probable cause requirement, or (3) that any search of a student in our schools based on the probable cause requirement constitutes a relatively limited invasion of privacy when compared with a typical police search for evidence. Under such circumstances the probable cause standard may be diminished to the less demanding standard of reasonable suspicion. Having not been given an opportunity to establish the need for such a diminished standard in this case, an evidentiary hearing must be conducted at which the Government will be permitted to show that the search in this case met these criteria.

 Until the need for such a diminished standard is established, if a teacher is sure a crime has been committed in his presence, of course, he need not obtain a warrant. He may effect an arrest.[17] Nor should teachers shy away from searching a student reasonably suspected of having a dangerous item, such as a weapon, because even a police officer could do so—probable cause is not required when the threat of a weapon exists. E.g., Terry v. Ohio, 392 U.S. 1 (1968). More importantly, school officials can still operate within the scope of existing administrative procedures and impose appropriate sanctions for misbehavior within the school, whether it be restrictions on in-school activities, probation, suspension or even expulsion. Nothing said in this opinion should be construed as saying that the dictates of the Fourth Amendment and the exclusionary rule restrict the teachers from acting under existing administrative authority. The court's holding today only is applicable to those in-school searches and seizures of students where the evidence that is obtained is to be used in a juvenile or criminal prosecution within the judicial system.

---

[17] 5 V.I.C. § 3563 (1967).