2000 Utah Ct. App. 120

**State of Utah, IN THE INTEREST OF A.C.C., a person under eighteen years of age.**

**A.C.C., Appellant,**

**v.**

**State of Utah, Appellee.**

**No. 990012–CA.**

Court of Appeals of Utah.

May 4, 2000.

Robert L. Donohoe, Rilling & Associates, Salt Lake City, for Appellant.

Jan Graham, Attorney General, and Christine Soltis, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and DAVIS.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 A.C.C. appeals the juvenile court's denial of his motion to suppress evidence obtained when his probation officer searched his backpack and found drug paraphernalia. A.C.C. argues the juvenile court erred in holding that juvenile probation officers do not need reasonable suspicion before conducting warrantless searches of their probationers. We reverse and remand.

## BACKGROUND

¶ 2 The search at issue in this case occurred on September 21, 1998, and was conducted by Officer Wyatt Stanworth who had been A.C.C.'s probation officer for a little over a year. Prior to this incident, A.C.C. had three adjudications related to marijuana use and had admitted he was addicted to marijuana.

¶ 3 About a month before the search, Officer Stanworth tested A.C.C. for marijuana use. The urine screen gave a positive result for marijuana that was verified by a lab test. Three weeks later, another test was conducted with a borderline result. Officer Stanworth, however, called it clean because he felt traces of marijuana from the previous positive test may have lingered in A.C.C.'s system.

¶ 4 Officer Stanworth's September 21st visit was prompted in large part by a phone call from A.C.C.'s mother. According to Officer Stanworth, A.C.C.'s mother is "exceptionally good at complying with the probation order and reporting concerns or violations." On September 17th or 18th, A.C.C.'s mother called Officer Stanworth stating she was concerned that A.C.C. was hiding marijuana in his car because he had tested positive the month before and she had not found any marijuana in his usual hiding places in the house.

¶ 5 On the 21st, Officer Stanworth arrived at A.C.C.'s house at approximately 6:30 p.m. and saw A.C.C.'s car parked in the driveway with his black backpack on the backseat. In past visits with A.C.C. at the probation office, Officer Stanworth had searched the backpack, but never found anything illegal. After visiting with A.C.C. and his mother for a few moments, Officer Stanworth told A.C.C. he was there to search his room and his car. A.C.C. stated he was not feeling well. When Officer Stanworth opened the door of A.C.C.'s car, he smelled a strong odor and asked A.C.C. what he had been smoking. A.C.C. stated he had been smoking cigarettes to try to get off marijuana.

¶ 6 Officer Stanworth proceeded to search the car. As he searched, he noticed the smell was stronger towards the back of the car. Because A.C.C. had told him he was not feeling well, Officer Stanworth took the backpack from the car and told him they would search it in the house. Officer Stanworth testified the smell was "obviously emanating from the backpack."

¶ 7 When they got inside the house, Officer Stanworth asked A.C.C. if he would find anything in the backpack. A.C.C. answered "no." When he unzipped the large pouch of the backpack, Officer Stanworth found an

eight-inch bong[1] that had been used recently.

¶ 8 Officer Stanworth filed both delinquency and probation violation charges against A.C.C. as a result of finding the bong. A.C.C. filed a motion to suppress, asserting that the bong had been seized in violation of his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 14 of the Utah Constitution. The juvenile court conducted a hearing on the motion to suppress and denied the motion, stating that juvenile probation officers do not need reasonable suspicion to search their probationers because juvenile probationers do not have a reasonable expectation of privacy. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 9 This appeal presents the following issues: (1) does the exclusionary rule apply to juvenile proceedings; (2) are juvenile probationers entitled to a reasonable expectation of privacy; and (3) if so, did Officer Stanworth have reasonable suspicion to conduct the search of A.C.C.'s car and backpack. The applicability of the exclusionary rule to juvenile court proceedings and whether juvenile probationers have a reasonable expectation of privacy present questions of law which we review for correctness. *See In re A.R.*, 1999 UT 43, ¶ 10, 982 P.2d 73; *State v. Jarman*, 1999 UT App 269, ¶ 4, 987 P.2d 1284. A trial court's factual findings underlying its decision to grant or deny a motion to suppress are reviewed under a clearly erroneous standard, and its legal conclusions are reviewed for correctness. *See Jarman*, 1999 UT App 269 at ¶ 4, 987 P.2d 1284.

## ANALYSIS

### The Exclusionary Rule

¶ 10 Prior to addressing the constitutionality of the search, we must first determine whether the exclusionary rule is applicable to juvenile court proceedings. *See In re A.R.*, 1999 UT 43, ¶ 13, 982 P.2d 73; *State v. Jarman*, 1999 UT App 269, ¶ 5, 987 P.2d 1284 (noting court need not reach merits of

constitutional claim if exclusionary rule is inapplicable).

¶ 11 Relying on *Jarman*, the State argues that to the extent the hearing involved a revocation of A.C.C.'s probation, the exclusionary rule is clearly not applicable. The State further contends that the hearing was a delinquency proceeding and that the exclusionary rule should not apply because juvenile courts are civil courts designed to rehabilitate rather than punish juvenile offenders.

¶ 12 In *Jarman*, an adult probationer moved to suppress evidence obtained from a urinalysis conducted by an officer who lacked reasonable suspicion that the probationer had used drugs. *See Jarman*, 1999 UT App 269 at ¶ 3, 987 P.2d 1284. Relying on *Pennsylvania Bd. of Probation v. Scott*, 524 U.S. 357, 367, 118 S.Ct. 2014, 2022, 141 L.Ed.2d 344 (1998) (holding exclusionary rule inapplicable to parole violation proceedings), and *In re A.R.*, 1999 UT 43 at ¶ 20, 982 P.2d 73 (holding exclusionary rule inapplicable to child protection proceedings), we held that the exclusionary rule is not applicable to adult probation proceedings because "the social costs outweigh the benefit of deterrence." *Jarman*, 1999 UT App 269 at ¶ 7, 987 P.2d 1284. In *Scott*, the United States Supreme Court stated that "parole officers 'are undoubtedly aware that any unconstitutionally seized evidence that could lead to an indictment could be suppressed in a criminal trial.'" *Id.* at ¶ 6 (quoting *Scott*, 524 U.S. at 369, 118 S.Ct. at 2022). The Court concluded that any deterrence would be marginal as compared to excluding reliable evidence in the narrow area of parole proceedings which would allow parolees to avoid the consequences of their actions. *See id.* Similarly, we found the Court's reasoning applied equally to probation hearings: "because the acts constituting a probation violation could also give rise to a criminal prosecution, the exclusionary rule's application to criminal prosecutions already deters unreasonable searches and seizures of probationers." *Id.* at ¶ 7.

---

1. A bong is a device used to smoke marijuana; it is specifically listed as a prohibited device under the Utah Drug Paraphernalia Act. *See* Utah Code Ann. § 58–37a–3(12)(*l*) (1998).

¶ 13 We believe that had the suppression hearing solely focused on revoking A.C.C.'s probation, *Jarman* would likely control, and the exclusionary rule would not apply. It is clear from the record below, however, that the parties and the court addressed the motion to suppress in the context of a juvenile delinquency proceeding rather than a probation revocation hearing.[2] Because a juvenile delinquency hearing is more similar to an adult criminal proceeding than to an adult probation proceeding,[3] *Jarman* does not control and we must determine whether the exclusionary rule applies to juvenile delinquency proceedings.

■ ¶ 14 "[T]he [exclusionary] rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974). Because the exclusionary rule is not constitutionally mandated, however, it is "applicable only where its deterrence benefits outweigh its 'substantial social costs.'" *Scott*, 524 U.S. at 363, 118 S.Ct. at 2019 (citation omitted). The United States Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *See id.* (citation omitted) (holding exclusionary rule is inapplicable to adult parole proceedings); *see also United States v. Janis*, 428 U.S. 433, 448, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976) (declining to extend exclusionary rule to civil tax proceedings); *Calandra*, 414 U.S. at 343–346, 94 S.Ct. at 620–21 (declining to apply exclusionary rule to grand jury proceedings).

¶ 15 Like the United States Supreme Court, Utah's appellate courts, when determining whether to apply the exclusionary rule, focus on "the nature of the proceeding rather than the circumstances under which the evidence was collected." *In re A.R.*, 1999 UT 43 at ¶ 15, 982 P.2d 73. Utah courts have determined that the exclusionary rule is not applicable in certain civil proceedings. *See, e.g., In re A.R.*, 1999 UT 43 at ¶ 20, 982 P.2d 73 (holding exclusionary rule does not apply to child protection proceedings); *State v. Pizel*, 1999 UT App 270,¶ 5, 987 P.2d 1288 (holding exclusionary rule is not applicable to adult probation revocation proceedings); *Jarman*, 1999 UT App 269 at ¶ 7, 987 P.2d 1284 (same).

¶ 16 Nevertheless, our supreme court has applied the exclusionary rule to civil proceedings which are "quasi-criminal" in nature. *See Sims v. State Tax Comm'n*, 841 P.2d 6, 14 (Utah 1992). In *Sims*, the petitioner challenged the admission of illegally seized evidence in a civil proceeding under the Illegal Drug Stamp Tax Act. *See id.* at 13. Analyzing the issue under Article 1, Section 14 of the Utah Constitution, the court stated: "Where the aims and objectives of a civil penalty are closely aligned with those of the criminal law, however, the protections afforded by the criminal law ought to be extended to the quasi-criminal proceeding." *Id.* The court went on to state: "The quasi-criminal nature of the tax proceeding in this case is further evidenced by the fact that enforcement of the Act is inextricably connected with proof of criminal activity." *Id.* at 14.

¶ 17 The State argues that the exclusionary rule should not be applicable to delinquency proceedings because juvenile courts are civil courts acting in the best interests of minors rather than criminal courts imposing criminal penalties. The State cites *State v. Mohi*, 901 P.2d 991, 998–99 (Utah 1995), for the proposition that juvenile courts are paternalistic courts that rehabilitate rather than punish juvenile offenders. In *Mohi*, our supreme court was faced with determining whether the direct-file provision of the Utah Code allowed for unequal treatment of certain classes of juvenile offenders. *See id.* at 998. In its discussion of whether the statute arbitrarily allowed prosecutors to treat certain juvenile offenders unequally, the court

---

2.  In fact, the State concedes in its brief that the parties and the court addressed the motion only in the context of the delinquency proceeding.

3.  As one court noted: "Juvenile delinquency proceedings originated as informal 'paternalistic' proceedings but have become very similar to their adult criminal counterparts through the years." *United States v. Doe*, 801 F.Supp. 1562, 1566 n. 3 (E.D.Tex.1992).

distinguished between the penalties a juvenile would face in the adult criminal system as opposed to the juvenile system. *See id.* The court found the statute unconstitutional because "the statute permits two identically situated juveniles, even co-conspirators or co-participants in the same crime, to face radically different penalties and consequences without any statutory guidelines for distinguishing between them." *Id.* While *Mohi* stands for the proposition that the juvenile system imposes lighter sentences on offenders than the adult criminal system, this analysis provides little insight into the issue of whether the exclusionary rule applies to juvenile delinquency proceedings.

¶ 18 Similarly, the State cites *In re L.D.S. v. Stevens*, 797 P.2d 1133, 1137 (Utah Ct.App. 1990), as further support for the proposition that the juvenile system does not punish its offenders. Like *Mohi*, *Stevens* is not helpful because it only summarily notes that juvenile proceedings are civil, equitable proceedings in the context of terminating parental rights. *See id.* Importantly, neither *Stevens* nor *Mohi* refutes the basic fact that a juvenile found delinquent by a juvenile court may face a loss of liberty.

¶ 19 The State also cites *In re Lindh*, 11 Utah 2d 385, 359 P.2d 1058 (1961), and *Velasquez v. Pratt*, 21 Utah 2d 229, 443 P.2d 1020 (1968), to buttress its argument. In *In re Lindh*, our supreme court discussed the nature of juvenile courts, stating that: "The role of the court is to become sort of a substitute parent to step in the breach and help bring about the proper care, discipline, and adjustment of children when the normal family unit is failing to function." *In re Lindh*, 359 P.2d at 1059. The court went on to state this paternalistic function "does not mean that the rights of the child involved are intended to be usurped or impaired" and that "[i]t is of course fundamental that both the minor and his parents are entitled to the basic requirements of due process and fair treatment." *Id.*

¶ 20 In *Velasquez*, the court addressed what procedural rights a juvenile was entitled to in a probation revocation hearing. The court stated, "justice requires that a person on probation should not be compelled to live in dread of being recommitted on the whim or caprice of a probation officer, or even of a court." *Velasquez*, 443 P.2d at 1021. Underlying the court's statements in both *In re Lindh* and *Velasquez* was the recognition that a juvenile offender who violates the law may be deprived of her or his liberty. *See Velasquez*, 443 P.2d at 1021 ("[T]he suggestion that Steven and his mother were not aware that the hearing on probation revocation might deprive him of his liberty is hardly worthy of comment."); *In re Lindh*, 359 P.2d at 1059–60 (dismissing as meritless argument that defendant was deprived of due process because notice did not state its purpose was to revoke probation).

¶ 21 Like the action under the Illegal Drug Stamp Tax Act in *Sims*, a juvenile delinquency action "necessarily involves criminal conduct and a violation of criminal law." *Sims*, 841 P.2d at 14. The State's argument that juvenile courts do not *convict* juveniles misses the point.[4] In fact, under the Juvenile Code, a juvenile found delinquent faces penalties ranging from "probation ... in the minor's own home" to placement under state supervision with a "parent or guardian, the Division of Youth Corrections, or the Division of Child and Family Services." Utah Code Ann. § 78–3a–118(2)(a)(i) -(ii) (Supp.1999). Additionally, "[t]he court may commit the minor to the Division of Youth Corrections for secure confinement." *Id.* § 78–3a–118(2)(d)(i) (Supp. 1999). "[T]hat the purpose of the commitment is rehabilitative and not punitive [does not] change its nature.... Regardless of the purposes for which the incarceration is imposed, the fact remains that it is incarceration." *United States v. Doe*, 801 F.Supp. 1562, 1568 (E.D.Tex.1992) (alterations in original). Furthermore, the United States Supreme Court stated:

---

4. Utah Code Ann. § 78–3a–117(2) (Supp.1999) states: "An adjudication by a juvenile court that a minor is within its jurisdiction under Section 78–3a–104 is not considered a conviction of a crime...." Further, the statute provides: "A minor may not be charged with a crime or convicted in any court except as provided in Sections 78–3a–602 and 78–3a–603, and in cases involving traffic violations." Utah Code Ann. § 78–3a–117(3) (Supp.1999).

We made clear in [*Gault* ] that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for "[a] proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution."

*In re Winship*, 397 U.S. 358, 365–66, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) (quoting *In re Gault*, 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967)) (second alteration in original).

¶ 22 Additionally, the Utah Supreme Court has stated that juveniles, like adults, are entitled to be free from unreasonable searches and seizures under the Fourth Amendment. *See In re K.K.C.*, 636 P.2d 1044, 1045 (Utah 1981) (per curiam) (explaining "courts have ... extended many protections of the criminal justice system to juveniles who have allegedly violated the law, including the exclusionary rule relating to illegally seized evidence" (internal citations omitted)). Finally, every court that has addressed the issue has determined that the exclusionary rule applies to juvenile delinquency proceedings. *See* 1 Wayne R. La-Fave, *Search and Seizure* § 1.7(b), 189 (3d ed. 1996) ("[T]hose state courts which have had to face the question have consistently held that the Fourth Amendment exclusionary rule is applicable in juvenile delinquency proceedings.");[5] *see also Doe*, 801 F.Supp. at 1567 (stating all state courts that have considered issue have found exclusionary rule applies in juvenile delinquency hearings). Those courts have looked beyond the informal, civil nature of juvenile proceedings and found "the potential penalties for being adjudicated a juvenile delinquent are on par with those resulting from a criminal conviction...." *Doe*, 801 F.Supp. at 1568. Fur-

thermore, these courts have concluded that when the state seeks to prove a minor is delinquent, "ordinary criminal standards of proof and rules of evidence apply ... [and] all constitutional protections against unlawful searches and seizures are applicable...." *In re J.A.*, 85 Ill.App.3d 567, 40 Ill.Dec. 755, 406 N.E.2d 958, 960 (1980); *accord In re L.L.*, 90 Wis.2d 585, 280 N.W.2d 343, 347 (Ct.App.1979) (holding juveniles are entitled to due process and exclusionary rule is "one of the basic elements of due process").

¶ 23 We are not persuaded to depart from the holdings of other courts on this issue and therefore conclude that the exclusionary rule is applicable to juvenile delinquency proceedings if a search was conducted in violation of a juvenile's rights; "[a]nything less would reduce this provision to nothing more than a form of words." *State v. DeBooy*, 2000 UT 32, ¶ 33 n. 12, 996 P.2d 546.

### Reasonable Expectation of Privacy

¶ 24 The juvenile court did not determine whether Officer Stanworth had reasonable suspicion to search A.C.C.'s backpack. Instead, the court concluded that A.C.C. was not entitled to a reasonable expectation of privacy. The court acknowledged that A.C.C. may have had a subjective expectation of privacy; he sincerely hoped that neither Officer Stanworth nor his mother would find his contraband. The juvenile court, however, reasoned that this expectation of privacy was not one that society is prepared to recognize as reasonable. Specifically, the court found that society and juvenile courts "want juvenile probationers to believe that probation officers may search them because of their probation status. It is precisely this fear which in many cases will provide a deterrent effect upon a young person who may be tempted to revert to using drugs while on probation." In essence, the juvenile court

---

**5.** LaFave cites the following in support: *In re Tyrell J.*, 8 Cal.4th 68, 32 Cal.Rptr.2d 33, 876 P.2d 519 (1994); *In re Marsh*, 40 Ill.2d 53, 237 N.E.2d 529 (1968); *In re J.A.*, 85 Ill.App.3d 567, 40 Ill.Dec. 755, 406 N.E.2d 958 (1980); *In re L.B.*, 99 N.J.Super. 589, 240 A.2d 709 (1968); *State v. Lowry*, 95 N.J.Super. 307, 230 A.2d 907 (N.J.1967); *State v. Doe*, 93 N.M. 143, 597 P.2d 1183 (N.M.Ct.App.1979); *In re Edwin R.*, 60 Misc.2d 355, 303 N.Y.S.2d 406 (N.Y.1969); *In re*

*L.L.*, 90 Wis.2d 585, 280 N.W.2d 343 (Ct.App. 1979); Uniform Juvenile Court Act § 27(b) (1968). Other cases have similarly held that the exclusionary rule applies in juvenile delinquency hearings. *See, e.g., M.J.S. v. Florida*, 624 So.2d 359, 360 (Fla.Dist.Ct.App.1993) (suppressing illegally obtained evidence in juvenile proceeding); *In re Smalley*, 62 Ohio App.3d 435, 575 N.E.2d 1198, 1202 (1989) (suppressing all tainted evidence that was fruit of illegal search).

concluded that juvenile probationers were not entitled to the constitutionally based protection from *unreasonable* search and seizure.

¶ 25 The juvenile court and the State rely on *In re Tyrell J.*, 8 Cal.4th 68, 32 Cal. Rptr.2d 33, 876 P.2d 519 (1994), in which the California Supreme Court addressed this issue and concluded that juvenile probationers did not have a reasonable expectation of privacy. *See id.* 32 Cal.Rptr.2d 33, 876 P.2d at 530. The court stated: "A juvenile probationer must thus assume every law enforcement officer might stop and search him at any moment. It is this thought that provides a strong deterrent effect upon the minor tempted to return to his antisocial ways." *Id.* In arriving at this conclusion, the court relied on prior California cases which held that adult probationers also had a reduced expectation of privacy. *See id.* 32 Cal. Rptr.2d 33, 876 P.2d at 528; *see also People v. Reyes*, 19 Cal.4th 743, 80 Cal.Rptr.2d 734, 968 P.2d 445, 447–51 (1998) (holding a search of a parolee "may be reasonable despite the absence of particularized suspicion."); *People v. Bravo*, 43 Cal.3d 600, 238 Cal.Rptr. 282, 738 P.2d 336, 342 (1987) (holding consent to search provision of adult probation agreement waives any Fourth Amendment right to be free from unreasonable searches).

¶ 26 The State argues that society is not prepared to recognize that juvenile probationers have a reasonable expectation of privacy. The State contends that the most effective deterrent to future antisocial conduct is a juvenile probationer's fear of being searched at any time. *See In re Tyrell J.*, 32 Cal.Rptr.2d 33, 876 P.2d at 530; *accord Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 630–31, 109 S.Ct. 1402, 1420, 103 L.Ed.2d 639 (1989) (allowing random suspicionless drug testing of railroad employees reduces likelihood of drug use while on duty);

*Griffin v. Wisconsin*, 483 U.S. 868, 875, 107 S.Ct. 3164, 3169, 97 L.Ed.2d 709 (1987) (stating intensive probationary supervision can reduce recidivism).

¶ 27 *In re Tyrell J.* relied on prior California precedent which is contrary to our own case law. In *State v. Ham*, we recognized that adult probationers are not entitled to the same liberties as an ordinary citizen. *See* 910 P.2d 433, 437–38 (Utah Ct.App.1996). Nevertheless, unlike the California Supreme Court, we concluded that, regardless of the language contained in the probation agreement,[6] the Fourth Amendment required a probation officer to have reasonable suspicion of illegal activity before conducting a warrantless search of an adult probationer. *See id.* at 438. The reasonable suspicion standard adopted in *Ham* is in accord with the United States Supreme Court's decision in *Griffin* which determined that the reasonable suspicion standard struck the appropriate balance between a probationer's privacy interest and the needs of government and society. *See Griffin*, 483 U.S. at 876, 107 S.Ct. at 3170. Thus, an adult probationer has an expectation of privacy, albeit a lesser one than non-probationers, that may result in a lawful warrantless search only if there is reasonable suspicion of illegal activity.[7] This is in contrast to the rights of most citizens to be free from warrantless searches absent probable cause that a crime has occurred. *See State v. Davis*, 965 P.2d 525, 529 (Utah Ct.App.1998) *cert. denied*, 982 P.2d 88 (Utah 1999). In other words, an adult probationer is not subject to *unreasonable* searches and seizures.

¶ 28 In addition to the deterrent effect, the State argues that in many contexts juveniles are subject to warrantless searches based on a reduced expectation of privacy. The State cites to school cases as an example of an area where juveniles have a reduced expectation

---

6. The State also argued that A.C.C. consented to random, suspicionless searches as part of his probation agreement. We rejected this argument in *Ham* as it applied to adult probationers and find the reasoning equally applicable to juvenile probationers. *See Ham*, 910 P.2d at 437 (holding "defendant did not agree in advance to an unfettered right to search at any time for absolutely no reason").

7. Whether a warrantless search of a probationer is reasonable under this lower standard is based on a two-part test: (1) did the officer have a reasonable suspicion that the probationer committed a crime or violation; and (2) is the search reasonably related to the officer's duty. *See State v. Davis*, 965 P.2d 525, 529–30 (Utah Ct.App. 1998).

of privacy. *See, e.g., Vernonia Sch. Dist. v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). "The determination of the standard of reasonableness governing any specific class of searches requires 'balancing the need to search against the invasion which the search entails.'" *T.L.O.,* 469 U.S. at 337, 105 S.Ct. at 740 (citation omitted). In *Vernonia,* the Court determined that student athletes were lawfully subject to random, suspicionless drug testing. *See Vernonia,* 515 U.S. at 664–65, 115 S.Ct. at 2396. Important to the analysis in *Vernonia* was that the "subjects of the Policy" were students in "the temporary custody of the State as schoolmaster." *Id.* at 654, 115 S.Ct. at 2391. Thus, the Court stated that "while children assuredly do not 'shed their constitutional rights . . . at the schoolhouse gate,' . . . . Fourth Amendment rights, no less than First and Fourteenth Amendment rights, are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Id.* at 655–56, 115 S.Ct. at 2392 (citations omitted) (first alteration in original). Also, the Court determined Vernonia's policy only affected student athletes who had an even lower expectation of privacy than nonathlete students because of their decision to participate in athletic programs which "are not notable for the privacy they afford." *Id.* at 657, 115 S.Ct. at 2393.

¶ 29 In *T.L.O.,* the Court required that school officials have reasonable grounds for suspecting a search would turn up evidence of wrongdoing. *See T.L.O.,* 469 U.S. at 341–42, 105 S.Ct. at 743. Balancing the need of school officials to maintain safety and order with a student's privacy interest, the Court concluded a school search could be reasonable based on a standard somewhat lower than the traditional probable cause standard. *Id.* at 341–42, 105 S.Ct. at 742–43.

¶ 30 In both cases, the Court determined that juveniles in *school settings* have a reduced expectation of privacy. The school setting mandates a reduced privacy interest because there is a compelling need for a safe, orderly environment in the limited context of schools. Even then, there must be "reasonable grounds for suspecting that the search will turn up evidence that the student has violated . . . either the law or the rules of the school," *T.L.O.,* 469 U.S. at 342, 105 S.Ct. at 743, or students must have a particular status, such as student athlete, to justify a warrantless search. *See Vernonia,* 515 U.S. at 657, 115 S.Ct. at 2393.

¶ 31 Officer Stanworth, however, is not a school official and the search in question was not conducted in a school.[8] If the search of A.C.C. was in a school setting, *Vernonia* and *T.L.O.* would be instructive. Officer Stanworth searched A.C.C. and his car at A.C.C.'s home; accordingly, *Vernonia* and *T.L.O.* are not controlling in determining what expectation of privacy a juvenile probationer may legitimately enjoy while at his private residence.

¶ 32 Denying juvenile probationers a reasonable expectation of privacy is contrary to the notion that juveniles are entitled to Fourth Amendment protection. The United States Supreme Court has recognized that juveniles and juvenile offenders are entitled to many of the same protections as adults and adult offenders: "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault,* 387 U.S. at 13, 87 S.Ct. at 1436. *In re Gault* extended many of the constitutional protections afforded adults in criminal proceedings to juveniles in delinquency proceedings, including: notice of charges; right to counsel; and rights to confront witnesses, to cross-examine witnesses, and against self-incrimination. *See id.* at 31–34, 41, 57, 87 S.Ct. at 1446–47, 1451, 1459. Furthermore, in *In re Winship,* the Court held that juveniles were entitled to the "beyond a reasonable doubt" standard applicable

---

**8.** The State also argues that the relationship between the juvenile courts and the juvenile's parents shows that the juvenile courts act *in loco parentis.* The State argues that this theory is especially true in this case in which A.C.C.'s mother called Officer Stanworth to convey her concerns. This argument is unavailing, however, because A.C.C.'s mother did not conduct the search, and, as discussed earlier, a juvenile court adjudication may deprive a juvenile of liberty, requiring it to act constitutionally.

in adult criminal proceedings. *See In re Winship,* 397 U.S. at 367, 90 S.Ct. at 1074. Finally, in *T.L.O.,* the Court determined that juveniles had a right to be free from unreasonable searches and seizures by public school officials. *See T.L.O.,* 469 U.S. at 333, 105 S.Ct. at 738.

■■■ ¶ 33 A juvenile probationer is entitled to be free from *unreasonable* searches and seizures. The Fourth Amendment provides individuals a reasonable expectation of privacy by prohibiting unreasonable searches and seizures. What is reasonable is a function of an individual's position in society (e.g., regular citizen versus probationer) and the context in which the search takes place. In this case, A.C.C. was a juvenile probationer searched at his home where he was entitled to a reasonable expectation of privacy. To be reasonable, Officer Stanworth's search must be consistent with *Ham* and based on reasonable suspicion that A.C.C. had violated the law or terms of his probation.

### Reasonableness of Officer Stanworth's Search of A.C.C.

¶ 34 As noted earlier, we ordinarily review the juvenile court's findings of fact regarding a motion to suppress applying a clearly erroneous standard of review. However, because the juvenile court determined that juvenile probationers are not entitled to a reasonable expectation of privacy, it did not reach the question of whether Officer Stanworth's search was based on reasonable suspicion and therefore did not make factual findings. The juvenile court is in an advantaged position to assess the testimony presented, having had an opportunity to view the witnesses and judge their credibility. Thus, we remand this issue to the juvenile court to determine whether the search was consistent with the reasonable suspicion standard applicable to warrantless searches of juvenile probationers.

### CONCLUSION

¶ 35 We determine the exclusionary rule is applicable to juvenile delinquency hearings, and conclude that reasonable suspicion is necessary to conduct a search of a juvenile probationer. Accordingly, we reverse and remand for further proceedings to determine if there was reasonable suspicion to justify the search and seizure in this case.

¶ 36 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JAMES Z. DAVIS, Judge.