## PEOPLE OF THE VIRGIN ISLANDS IN THE INTEREST OF: T. S., a Minor

Family No. ST-2015-JD-7

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

July 22, 2015

KIMBERLY SALISBURY, ESQ., Assistant Attorney General, *For the People.*

SUSAN BRUCH MOOREHEAD, ESQ., *For the minor.*

WATLINGTON, *Judge*

## MEMORANDUM OPINION

(July 22, 2015)

This matter came before the Court on June 30, 2015 for a hearing on Minor's Motion to Suppress with Incorporated Memorandum of Law filed on May 18, 2015 and Renewed Motion to Schedule Evidentiary Hearing on Motion to Suppress filed on May 29, 2015. The Court granted the minor's motion for an evidentiary hearing on June 15, 2015. Assistant Attorney General, Kimberly Salisbury, Esq., appeared on behalf of the People. The Minor appeared personally and through counsel, Susan Bruch Moorehead, Esq. The minor's mother Tishia Skeete appeared. The court heard sworn testimony from Nicole Jacobs, Bernalyn Tomeau, Det. Rael

Donastorg, School Resource Officer Derrick Matthew, Police Officer Miguel Perez and Tishia Skeete.

The Minor sought to suppress all evidence seized during a search outside the fence of Ivanna Eudora Kean High School (Kean High), asserting that the search was unlawful and in violation of the Fourth Amendment. The People filed an Opposition to Motion to Suppress Evidence on May 18, 2015, asserting that the search was proper and the evidence should not be suppressed. For the reasons stated below, the minor's motion to suppress is denied.

## I. FACTUAL BACKGROUND

On the morning of February 6, 2015, Officer Derrick Matthew was assigned to the Gate B Entrance to Kean High with Bernalyn Tomeau, a school monitor. Officer Matthew was crossing students from the side of the street where the traffic was heading west. At approximately 7:30 a.m., Officer Miguel Perez informed Officer Matthew that Central Dispatch was attempting to reach him regarding a 911 call. Officer Perez relayed the message that suspicious activity was taking place with Kean High students. He stated that a caller indicated that several students were behind the school campus, near a carnival booth. Officer Matthew requested that Monitor Tomeau accompany him to the area since she is familiar with the students.

Officer Matthew, Officer Perez, and Monitor Tomeau arrived to the location and found three students in Kean High uniforms sitting behind a carnival booth. One of the students was T. S. Monitor Tomeau called the students over and asked why they were not in school. She then asked for their backpacks to search for weapons. T. S. gave Monitor Tomeau his backpack. Monitor Tomeau searched T. S.'s backpack and found thirteen (13) small plastic bags filled with marijuana. The minor was arrested and charged with possession of a controlled substance with the intent to distribute in violation of Title 19 V.I.C. § 604(a)(1).

On February 9, 2015, the Court found probable cause for the arrest, as the minor appeared to be on school property, allowed his backpack to be searched, and therein thirteen (13) small bags of marijuana were found. Thereafter, the Court advised T. S. of his rights and released him into his mother's custody.

## II. DISCUSSION

The minor's motion to suppress asserted several arguments: (1) Monitor Tomeau required probable cause to search T. S.'s backpack; (2) the search occurred off campus and was conducted with police involvement; (2) even if a "reasonable suspicion" standard was applicable, it is not met by the facts; (3) an off campus search by a school monitor is an act exceeding her authority; and (4) T. S. did not voluntarily consent to the search.

■ The Fourth Amendment[1] to the Constitution of the United States prohibits unreasonable searches and seizures and warrantless searches unsupported by probable cause. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). The Court must balance one's expectations of privacy and personal security against the government's need for public order. *N.J. v T.L.O.*, 469 U.S. 325, 337, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985); *Camara v. Municipal Court*, 387 U.S. at 532-533.

■ The Supreme Court carved out several exceptions to the warrant requirement, which includes exigent circumstances, search incident to an arrest, plain view, consent, inter alia. In 1985, the Supreme Court addressed the issue of warrantless searches by school officials, on school grounds, in *N.J. v. T.L.O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). The Court held "that school officials need not obtain a warrant before searching a student who is under their authority." *N.J. v. T.L.O.*, at 340; citing *Camara v. Municipal Court*, 387 U.S. 532, 532-3, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1985). "[T]he nature of that power (State's power over schoolchildren) is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995) (citations omitted). The Court found that "[t]he warrant requirement . . . is [ill-suited for] the school environment [and that] requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would

---

[1] The Fourth Amendment applies to the Virgin Islands pursuant to Section 3 of the Revised Organic Act of 1954.

118

unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *N.J. v. T.L.O.*, at 340.

## 1. The search was conducted on school property.

■ The minor asserts that the location of the search was not school property. The minor contends that this particular area was outside of the fencing surrounding the school's campus, near an emergency exit gate, and in an area where the public parks. Those facts alone do not determine the boundaries of the school's property. The only determinative factor is whether the minor's location was within the school's boundary line as defined by Title 17 V.I.C. § 91(b)(1), which states " 'school property' means in or within any building, structure, athletic playing field, playground, parking lot or land contained within the real property boundary line of a public elementary or secondary school; or in or on a school bus or at a school function."

Officer Matthew testified that the minor was found behind a carnival booth. The booth is located between the school's fencing and the access area to the new track/football field. Det. Rael Donastorg testified that Officer Matthew showed him the area in question. He stated that the new track/football field was built southwest of the school's buildings, outside of the fencing surrounding the school, and is separately fenced. The location of the carnival booth, where the minor was found, is in very close proximity to the school's fencing. Det. Donastorg contends that this area is the only way to access the new track/football field. Det. Donastorg also testified that he confirmed at the Recorder of Deeds Office that the area where the minor was found is within the school's boundary.

It is unmistakable that Kean High's campus is expansive and surrounded by undeveloped land. It is one of only two public high schools serving both St. Thomas and St. John. It is reasonable that the school left room for expansion. Kean High has expanded outside of the fence surrounding the campus to construct a track/football field.

■ The Court finds that fencing alone does not designate school property. Instead, it is used to contain students by surrounding the area where students are permitted. The Court finds that the location where the minor was found is within the boundary line of the school's property.

## 2. Lawful searches conducted by school officials, on school grounds, requires the reasonableness standard.

■ Generally, a search must be based upon probable cause. In the case of students searched in schools, the Supreme Court did not decide this matter until *N.J. v. T.L.O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 720 (1985). Prior to that decision, the Virgin Islands Superior Court in *Gov't of the V.I. In re M. S.*,[2] found that although Title 17 V.I.C. § 87 gave principals and teachers broad authority over students under the doctrine of *loco parentis*, it does not eliminate the requirement for probable cause in ". . . those [cases of] in-school searches and seizures of students where the evidence . . . obtain is to be used in a juvenile or criminal prosecution within the judicial system." *Gov't of the V.I. In re M. S.*, 17 V.I. 289, 300 (V.I. Terr. Ct. 1981). The Court stated, "[w]hen the Government asserts its police power, whether cloaked in a police uniform or the dress of a teacher, the Fourth Amendment and the exclusionary rule should apply to prevent abuse." *Id.* at 299.

■ However, in *N.J. v. T.L.O.*, the Supreme Court determined that the school settings require a modified level of suspicion, a "standard of reasonableness that stops short of probable cause." *N.J. v. T.L.O.*, 469 U.S. 325, 340-41, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). To determine the reasonableness of a search requires a "two fold inquiry: first, one must consider 'whether the . . . action was justified at its inception,' *Terry v. Ohio*, 392 U.S. at 20; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' " *N.J. v. T.L.O.*, at 341-42; *ibid.* "Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the

---

[2] Teacher searched minor smelling of marijuana, finding that the smell of marijuana, in of itself is not probable cause for a search. *Gov't of the V.I. In re M. S.*, 17 V.I. 289, 293 n.2 (V.I. Terr. Ct. 1981). The Court followed the factor from *Camara v. Municipal Court*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). "The Government is bound to adhere to the probable cause requirement of the Fourth Amendment unless on balance it can be established that (1) a unique danger exists in the schools that requires a highly effective solution, (2) that a solution cannot be found within the confines of the probable cause requirement, or (3) that any search of a student in our schools based on the probable cause requirement constitutes a relatively limited invasion of privacy when compared with a typical police search for evidence." *Gov't of the V.I. In re M. S.*, at 299-300.

search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* Thus, *N.J. v. T.L.O.* supersedes *Gov't of the V.I. In re M. S.*

■ The case at bar, is analogous to *N.J. v. T.L.O.*, where a teacher had reported that the minor was smoking in the restroom. The minor denied it but the "[vice principal's] suspicion that there were cigarettes in the purse was not an 'inchoate and unparticularized suspicion or "hunch," ' " *Terry v. Ohio*, 392 U.S. at 27; rather, it was the sort of " 'common-sense [conclusion] about human behavior' upon which 'practical people' " may rely. *N.J. v. T.L.O.*, at 345-46; *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). "[T]he requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . .' " *Id.*; *Hill v. California*, 401 U.S. 797, 804, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971).

■ Here, the minor was found in a location where he did not belong, which is known for illegal activity, particularly, prior to the start of the school day. Monitor Tomeau complained that when students are found in this area early in the morning, they are usually smoking marijuana.[3] Officer Matthew stated this area is known to be where students have cut a hole in the fence (or "jump" the fence) to enter and leave campus.

Although school property, this location was in a restricted area not readily used by student for legitimate purposes. The minors were in Kean High uniforms within walking distance of the school's main entrance, at a time when school was soon to begin. Couple the students' location with the 911 call reporting suspicious activity in an area known for illegal activity; it was reasonable to be suspicious. Therefore, the reasonableness standard applies.

Monitor Tomeau asked the students why they were not in school and told the students to hand her their backpacks for a search. She limited her search to the students' backpacks. It was reasonable for her to suspect that a search of the minor's backpack would turn up evidence that the students have violated the law or the school's rules. Monitor Tomeau has worked as a school monitor for five years. She knows the students and utilizes the

---

[3] Minor's Exhibit A, the Investigation Bureau of the VIPD interviewed Ms. Tomeau and took a written statement at approximately 11:46 a.m. at Ivanna Eudora Kean School.

same practices for all students found in unauthorized areas. Monitor Tomeau is allowed to rely on her experience and common sense about student behavior. Monitor Tomeau's suspicion was justified as she found thirteen (13) bags of marijuana in T. S.'s backpack.

### 3. The reasonableness standard applies as the school monitor conducted the search of T. S. and police officers' involvement was minimal.

■ The Minor also alleges that the police were involved in the search; thus, requiring probable cause to search. *State v. Alaniz*, states

> [T]here are three categories of school searches based on the amount of police involvement: (1) when school officials initiate the search or police involvement is minimal, the reasonableness standard applies; (2) when the search involves school resource officers acting on their own initiative or at the direction of other school officials to further educationally related goals, the reasonableness standard applies; and (3) when 'outside' police officers initiate the search, warrant and probable cause requirements apply.

2012 ND 76, 815 N.W.2d 234, 238 (2012); *see, e.g., T.S. v. State*, 863 N.E.2d 362, 367-68 (Ind. Ct. App. 2007); *Myers v. State*, 839 N.E.2d 1154, 1160 (Ind. 2005); *State v. Burdette*, 43 Kan. App. 2d 320, 225 P.3d 736, 740 (2010); *In re D.L.D.*, 203 N.C. App. 434, 694 S.E.2d 395, 400 (2010); *State v. J.M.*, 162 Wn. App. 27, 255 P.3d 828, 832 (2011). Officer Miguel Perez testified that he was patrolling the Red Hook area when he was radioed that the School Resource Officers (SROs) at Kean High, police officers assigned to schools, were not responding to the radio call. Officer Perez stated that he was dispatched to the school to inform the officers of the call, relaying the message that suspicious activity was taking place with Kean High students. He joined Officer Matthew and Monitor Tomeau in traveling to the scene only to assist, if needed. Officer Matthew, Monitor Tomeau and Officer Miguel Perez arrived at approximately the same time.

Officer Perez stated that Monitor Tomeau and Officer Matthew approached the minors and he remained near his vehicle. He observed Monitor Tomeau question the three students at the scene and conduct a search of T. S.'s backpack. Upon Monitor Tomeau finding the marijuana in T. S.'s backpack, Officer Matthew placed the minor under arrest. At the request of Officer Matthew, Officer Perez transported T. S. to school.

Officer Perez remained at the school for approximately 20-25 minutes while the vice principal inventoried the marijuana.[4]

 In this instance, the school monitor Ms. Tomeau questioned the students, initiated the investigation, and searched T. S. The police officers' involvement in the search of T. S. was minimal.[5] Officer Perez was merely present. Therefore, the reasonableness standard applies.

### 4. Consent is not required for a lawful search by a school official upon school grounds.

The minor argues that consent was not freely and voluntarily given. He asserts that he gave his backpack to Monitor Tomeau under duress because of the police officers' presence and Monitor Tomeau's position of authority at Kean High.

 Consent is only one of the Supreme Court acknowledged exceptions to the warrant requirement. It requires that consent be given freely and voluntarily. "[T]he State concedes that 'when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *see also Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948); *Amos v. United States*, 255 U.S. 313, 41 S. Ct. 266, 65 L. Ed. 654 (1921). In the instant case, the People relied on *N.J. v. T.L.O.*, not consent to justify the lawfulness of the warrantless search. The Supreme Court held "that school officials need not obtain a warrant before searching a student who is under their authority." *N.J. v. T.L.O.*, 469 U.S. at 340; citing *Camara v. Municipal Court*, 387 U.S. 523, 532-3, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1985).

 The facts here are consistent with *N.J. v. T.L.O.* A concerned citizen reported that several students were behind a carnival booth, near the rear of the school, at approximately 7:30 a.m. Three students were

---

[4] Officer Matthew and Monitor Tomeau travelled to the area where the minors were located in a golf cart and could not transport T. S. back to school.

[5] There is testimony that Officer Matthew searched one of the two other minors. However, that minor was not charged with a crime. Furthermore, T. S. does not have standing to challenge the search of another person.

found in Kean High uniforms sitting behind the carnival booth on school property. The reasonableness standard applied to the school monitor, Monitor Tomeau, allowing her to conduct a warrantless search upon a finding of reasonable suspicion. Monitor Tomeau relied on her experience and common sense. This led her to believe the situation was suspicious as the location was not a normal place for assembling. In fact, it was known to be a location where students smoked marijuana and absconded from school. The facts support reasonable suspicion. In light of reasonableness standard, the minor's consent was not necessary to conduct the warrantless search.

## III. CONCLUSION

 The Supreme Court has found "that a warrantless search by a school official does not violate the Fourth Amendment so long as the official 'has reasonable grounds to believe that a student possesses evidence of illegal activity or activity that would interfere with school discipline and order.'" *N.J. v T.L.O.*, 469 U.S. at 330-331; quoting *State in Interest of T.L.O.*, 94 N.J. 331, 463 A.2d 934, 941-942 (1983).

The testimony and evidence articulated facts that show reasonable grounds existed for the search, i.e., the students' location in restricted area of the school campus, students in school uniform, the start of the school was imminent, the 911 call, coupled with Monitor Tomeau's experience. Monitor Tomeau was within her authority to conduct the warrantless search.

For the reasons stated in this memorandum opinion, the Minor's Motion to Suppress is **DENIED**. This matter is resolved in accordance with this Memorandum Opinion and order of even date. Accordingly, it is hereby

**ORDERED** that a copy of this Memorandum Opinion shall be personally served upon the minor, and his mother Tishia Skeete; and copies directed to Kimberly Salisbury, Esq., Assistant Attorney General, Susan Bruch Moorehead, Esq., Sgt. Aaron Krigger at the Juvenile Bureau, Tishiro Hanley, Social Worker at the Department of Human Services, IT Division, and Law Librarian (for publication).